# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| ANDREW OUTEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 12-4166 |
| PRIALEAU, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                              **NOVEMBER 27, 2012**

Presently before this Court is Plaintiff, Andrew Outen's ("Plaintiff"), Motion for the Appointment of Counsel. For the reasons set forth below, this Motion is denied.

**I.    BACKGROUND**

Plaintiff is, and was at all times, a prisoner of the state of Pennsylvania in the custody of the Department of Corrections. (Compl. ¶ 3.) In November of 2011, Plaintiff was paroled from prison to Gaudenzia D.R.C. ("Guadenzia"), a treatment center located in Philadelphia, Pennsylvania. (Id. ¶ 11.) As a condition of his parole, Plaintiff was ordered to participate in a violence prevention program and to receive outpatient drug and mental health treatment. (Id.) On March 13, 2012, Plaintiff's parole was revoked and he was returned to prison for drug use and for wearing dark sunglasses inside the facility. (Id. at 38.)

On September 10, 2012, Plaintiff filed suit against Defendants, Parole Agent Mark Thompson, Parole Supervisor Carlos Riera[1] (both employees of the Pennsylvania Board of

---

[1] In the Complaint, Plaintiff mistakenly spelled "Riera" as "Rivera."

Probation and Parole), and Gaudenzia employees Darien Prialeau, Larry Barksdale, Annie McCray and Brenda Kennerly, for deprivation of his civil rights under 42 U.S.C. § 1983. (Id. ¶ 4-9.) Specifically, Plaintiff claims Defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights, as well as the Americans with Disabilities Act (the "ADA") 42 U.S.C. § 12101. (Id. ¶ 15, 46, 47, 52, 53, 65.)

Plaintiff has been granted leave to proceed in forma pauperis. (Doc. 6.) Now, he comes before the Court requesting the appointment of counsel.

## II. DISCUSSION

Plaintiff sets forth several grounds to support his request for the appointment of counsel. Plaintiff asserts that he lacks legal skills, a formal education and access to a law library, a copier and a typewriter. Additionally, Plaintiff avers that he suffers from the side effects of glaucoma and schizophrenia. In light of these considerations, Plaintiff believes it would be in the best interests of justice to appoint counsel.

It is well settled that "indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." Gordon v. Gonzalez, 232 F. App'x 153, 156 (3d Cir. 2007) (quoting Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002)). However, a district court is empowered with the discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The court's decision whether to appoint counsel is to be given wide latitude and will only be overturned if its ruling is clearly an abuse of discretion. Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).

As a preliminary matter, the district court must first determine if the plaintiff's claim has arguable merit in fact and law. Upon a favorable finding, the court then proceeds to consider

2

certain additional factors that bear on the necessity for the appointment of counsel. Id. at 155. These factors enunciated by the United States Court of Appeals for the Third Circuit ("Third Circuit") in Tabron include: (1) the plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. Montgomery, 294 F.3d at 499 (quoting Tabron, 6 F.3d at 155). This list is not exhaustive, nor is any one factor determinative. Parham v. Johnson, 126 F.3d 454, 458 (3d Cir. 1997).

In his Complaint, Plaintiff recites a long and detailed list of alleged offenses - all of which appear to lack merit in fact or law. In an effort to pare down this extensive document, we provide a short summary of the Complaint. Plaintiff asserts that the conditions of his confinement at Guadenzia violated his Eighth and Fourteenth Amendment rights due to the presence of drug use (i.e., the smoking of the synthetic drug "K2"). (Id. ¶ 47-52.) After complaining of these conditions to the proper officials, Plaintiff contends that these officials, in conjunction with Defendants Parole Agent Thompson and Parole Supervisor Riera, retaliated against the exercise of his lawful First Amendment rights by revoking his parole and sending him back to prison. (Id. ¶ 38.) In addition, Plaintiff asserts that Defendants used his medical need to wear dark sunglasses at all times as a pretext for their retaliatory conduct in violation of the Americans with Disabilities Act. (¶ 53, 57). Finally, Plaintiff avers violations of his Fifth Amendment rights for allegedly being denied a "meaningful post deprivation remedy." (Id. ¶ 46.)

Plaintiff's claims appear dubious at best. For example, Plaintiff contends that he is suffering mental and physical harm due to his forcible return to prison. (Id. ¶ 59.) Yet, he admits to smoking marijuana, in violation of his parole, which is the very act that triggered his return to incarceration. (Id. ¶ 17, 40.) Plaintiff's admission undermines all of his claims by destroying the foundation upon which they rest. In light of our determination that Plaintiff's claims appear to lack merit in fact and law, we do not believe the appointment of counsel is proper in this case.

At this early stage in the proceedings, we note that we are not making judicial determinations as to the facts or legal standings of Plaintiff's claims. Rather, they are solely manifested in regards to the decision to appoint counsel for Plaintiff. Without regard to this finding, but with an eye towards providing a complete record, we will assume *arguendo* that Plaintiff's claims do have some merit in fact and law. Thus, we proceed upon the analytical course charted in Tabron.

### A. **The Plaintiff's Ability to Present His Own Case**

The ability of a plaintiff to present his own case is arguably the most significant of the Tabron factors. Montgomery, 294 F.3d at 501. This determination is based on several criteria including plaintiff's education, literacy, prior work experience, prior litigation experience, ability to understand English and the restraints placed on him by incarceration (i.e., access to resources such as a typewriter, telephone and computer). Tabron, 6 F.3d at 156; see also Parham, 126 F.3d at 459. However, it is not necessary that plaintiffs have the skills and expertise of a trial lawyer; only that they possess the baseline abilities to adequately present their case. See Gorden v. Gonzalez, 232 F. App'x 153, 157(3d Cir. 2007) (the decision point is not whether plaintiff is a trial lawyer).

Plaintiff contends that he lacks a formal education and access to a law library, a copier and a typewriter. However, Plaintiff's filings contradict these contentions and demonstrate that he possesses the baseline abilities to adequately present his case. Plaintiff reads, writes and understands English. His filings evidence an understanding of Constitutional law, his ability to analyze legal issues, write coherently, set forth legal arguments in support of his claims and cite relevant judicial precedent and statutory law. In light of these facts, we find that Plaintiff is able to present his own case. See Mastromatteo v. Simock, 849 F. Supp. 25, 27 (E.D. Pa. 1994) (appointment of counsel not warranted where plaintiff was literate, presented clear and coherent motions and pleadings and properly cited case law). Though no one factor is dispositive, this factor weighs heavily against the appointment of counsel.

**B.    The Difficulty of the Particular Legal Issues**

In cases involving complicated legal issues, courts should be "more inclined to appoint counsel." Tabron, 6 F.3d at 156. This will benefit all parties involved. Parham, 126 F.3d at 459. Plaintiff raises multiple civil rights and Americans with Disabilities Act claims. These are not overly complex nor do they implicate any complicated or novel issues of law. Rather, Plaintiff raises standard Constitutional and statutory claims. In light of Plaintiff's abilities, we believe that these legal issues are within his range of competence. Accordingly, this factor weighs against appointing counsel.

**C.    The Necessity and Ability of the Plaintiff to Pursue Factual Investigation**

Courts must consider the extent of factual investigation necessary to prosecute a claim and the ability of the indigent plaintiff to pursue the investigation. Tabron, 6 F.3d at 156. Situations which are "likely to require extensive discovery and compliance with complex

discovery rules" gravitate toward the appointment of counsel. Id. Other than the multiple Defendants, this is a simple case and will not involve extensive discovery or compliance with complex discovery rules.

**D.      The Plaintiff's Capacity to Retain Counsel on His Own Behalf**

The appointment of counsel is not warranted where the plaintiff can easily afford and attain counsel. Id. at 157. In these cases, the court must recognize and preserve the "precious commodity" of volunteer legal advocates. Parham, 126 F.3d at 458. Here, the Plaintiff is indigent and is proceeding in forma pauperis. While clearly not a situation where Plaintiff can afford counsel, this is not a case to expend the limited volunteer resources. Overall, much like in Gordon and Asemani we question the "independent weight" of this factor as "indigent litigants by definition will almost always be able to satisfy it." Gordon, 232 F. App'x at 157; Asemani v. Sec. of the Dept. of Homeland Security, No. 11-7448, 2012 WL 569386, at *3 (E.D. Pa. Feb. 22, 2012). Although Plaintiff cannot afford to retain counsel, we do not apportion much weight to this factor.

**E.      The Extent to which this Case is Likely to Turn on Credibility Determinations**

Cases where adjudication relies solely on credibility determinations favor the appointment of counsel. Lasko v. Watts, 373 F. App'x 196, 201 (3d Cir. 2010). Regarding the credibility determination factor, "[w]hile the case ultimately may have relied upon credibility, it is difficult to imagine a case that does not. Thus, when considering this factor courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460. This case does not appear to be exclusively a swearing contest. Consequently, this factor does not favor the appointment of counsel.

## F. Expert Witness Testimony

The necessity of cross examining expert witnesses may favor the appointment of counsel. Tabron, 6 F.3d at 156. However, the appointment of counsel is not necessary in every case warranting expert testimony. Lasko v. Watts, 373 F. App'x 196, 202 (3d Cir. 2010). At this preliminary stage, the testimony of expert witnesses does not appear to be necessary. Accordingly, this prong does not favor the appointment of counsel.

## G. The Competency of the Plaintiff

The Federal Rules provide protections where an incompetent litigant is without representation in a lawsuit. See Fed. R. Civ. P. 17(c)(2) ("court must appoint a guardian ad lidem . . . or issue another appropriate order"). Recently in Powell v. Symons, 680 F.3d 301, 307 (3d Cir. 2012), the Third Circuit illuminated when these protections are triggered. Specifically, the Court noted:

> The federal courts are flooded with pro se litigants with fanciful notions of their rights and deprivations. We cannot expect district judges to do any more than undertake a duty of inquiry as to whether there may be a viable basis to invoke Rule 17. That duty of inquiry involves a determination of whether there is verifiable evidence of incompetence.

Id. Here, we are faced with Plaintiff's unsubstantiated assertions that he suffers from the side effects of glaucoma and schizophrenia. Plaintiff has failed to provide any verifiable evidence of these maladies. In the absence of such evidence, a court is not required to conduct a *sua sponte* determination whether an unrepresented litigant is incompetent. Id.; see also Hammond v. Bledsoe, No. 12-0242, 2012 WL 3779355, at *2 (M.D. Pa. Aug. 30, 2012) (finding that Powell ruling is an important limiting factor of Rule 17).

7

## III. CONCLUSION

Congress has entrusted the district courts with the judicial discretion to determine when to appoint counsel. See 28 U.S.C. § 1915(e)(1). In effectuating this responsibility, the Third Circuit developed an analytical framework to serve as a "guidepost" in these determinations. See Tabron, 6 F.3d at 155. Inherent in their decision, district courts must be mindful of the competing interests between the need to provide legal representation to effectively prosecute meritorious cases and the necessity of protecting the limited and "precious commodity" of volunteer legal advocates. Id. Thus, courts usually reserve the appointment of counsel for situations where there is a showing of special circumstances. Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984). After careful analysis in consideration of Tabron and its progeny, we find that this is not a situation warranting the appointment of counsel. Consequently, Plaintiff's Motion for the Appointment of Counsel is denied.

An appropriate Order follows.