# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW OUTEN, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 12-4166 |
| PRIALEAU, et al., | |
| Defendants. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                            **DECEMBER 10, 2012**

Presently before this Court are Defendants, Mark Thompson and Carlos Riera's ("Defendants"), Motion to Dismiss and Plaintiff, Andrew Outen's ("Plaintiff") Response in Opposition. For the reasons set forth below, Defendants' Motion is granted.

### I.     BACKGROUND

Plaintiff, is, and was at all times, a prisoner in the custody of the Department of Corrections of the State of Pennsylvania. (Compl. ¶ 3.) In November of 2011, Plaintiff was paroled from prison to Gaudenzia D.R.C. ("Guadenzia"), a treatment center located in Philadelphia, Pennsylvania. (Id. ¶ 11.) As a condition of his parole, Plaintiff was ordered to participate in a violence prevention program and to receive outpatient drug and mental health treatment. (Id.) On March 13, 2012, Plaintiff's parole was revoked and he was returned to prison for using drugs and refusing to participate in drug and alcohol treatment, behavior which violated conditions of his parole. (Id. ¶ 38; see also Doc. 22.) Plaintiff admits to smoking marijuana. (Compl. ¶'s 17, 40.)

On September 10, 2012, Plaintiff filed a pro se Complaint against Defendants, Parole Agent Mark Thompson, Parole Supervisor Carlos Riera[1] (both employees of the Pennsylvania Board of Probation and Parole), and Gaudenzia employees Darien Prialeau, Larry Barksdale, Annie McCray and Brenda Kennerly, alleging deprivation of his civil rights under 42 U.S.C. § 1983 ("§ 1983").[2] (Id. ¶'s 4-9.) Specifically, Plaintiff claims that Defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights, as well as the Americans with Disabilities Act (the "ADA") 42 U.S.C. § 12101. (Id. ¶'s 15, 46, 47, 52, 53, 65.) Additionally, Plaintiff sets forth tort claims under Pennsylvania state law. (Compl. ¶'s 59-60.)

On November 9, 2012, Defendants, Thompson and Riera, filed a Motion to Dismiss. (Doc. 12.) Plaintiff subsequently submitted a Response in Opposition to Defendants' Motion. (Doc. 19.) For the following reasons, the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) is granted.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of

---

[1] In the Complaint, Plaintiff mistakenly spelled "Riera" as "Rivera."

[2] We construe Plaintiff's Complaint liberally and afford him all the allowances due a pro se litigant. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011). We note that the pro se Complaint is difficult to understand. Interpreting what claims Plaintiff is intending to aver, and the facts surrounding such claims has proven to be difficult. In "liberally construing" this Complaint, we attempt to consider all of Plaintiff's causes of action in the instant Motion to Dismiss.

Philadelphia, No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)).  In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff.  Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The United States Court of Appeals for the Third Circuit has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint.  Wilson v. City of Philadelphia, 415 Fed. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations.  Iqbal, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Twombly, 550 U.S. at 555.  Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations.  Iqbal, 556 U.S. at 679.  These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8.  See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Where there are well-pleaded facts, courts must assume their truthfulness.  Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief.  Id. at 679.  This is a "context specific

3

task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 Fed. App'x 670, 673 (3d Cir. 2010).

## III. DISCUSSION

### A. The Eleventh Amendment and Actions Under § 1983 Against Defendants' Acting in Their Official Capacities

In the Complaint, Plaintiff asserts "each defendant is sued individually and in his or her official capacity." (Compl. ¶ 10.) However, the Eleventh Amendment bars actions brought under § 1983 against state officials acting in their official capacity. Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). This prohibition derives from the fact that a suit against an official acting within their official capacity is essentially a legal action against the state, and the state is not a "person" falling within the purview of § 1983. Id. (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)); see also Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). For this reason, Plaintiff's suit regarding Defendants' actions taken in their official capacity is dismissed.

Plaintiff's claims against Defendants in their "individual" or "personal" capacities are permitted by § 1983 and remain. We proceed to examine these claims.

**B.     Plaintiff's Claims under § 1983 Against Defendants Acting in Their Individual Capacities**

42 U.S.C. § 1983 was enacted to provide a neutral federal forum where civil grievances could be filed against state officials. See H.R. 96-548, at 1 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2609; 42 U.S.C. § 1983. For a plaintiff to gain relief under § 1983, they must establish: (1) that the defendant acted under the color of state law, and, (2) that the defendant's action deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; see also Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). § 1983 does not create any substantive rights; rather, it provides a remedy for the violation of rights created by other federal laws. Groman, 47 F.3d at 633; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Whether the defendants acted under the color of state law is a threshold issue to be decided before proceeding under § 1983. Groman, 47 F.3d at 638. It is indisputable in this case that Defendants acted under the color of state law. See Giddings v. Joseph Coleman Ctr., 473 F. Supp. 2d 617, 622 (E.D. Pa. 2007) (holding parole officers were acting under color of state law when enforcing Pennsylvania state law). Thus, the only issue is whether Defendants' actions deprived the plaintiff of any rights protected by the Constitution or the laws of the United States. Plaintiff asserts a plethora of Constitutional violations including deprivations of his First, Eighth and Fourteenth Amendment rights.

It is Plaintiff's burden to demonstrate that each individual Defendant committed the

alleged wrong-doing.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Liability under § 1983 requires a showing of personal involvement, and cannot be predicated solely on the doctrine of *respondeat superior*.  Id.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence which must be made with appropriate particularity."  Albrecht v. Correctional Med. Serv.'s, No. 06-2772, 2009 WL 1834320, at *3 (D.N.J. June 25, 2009) (quoting Rode, 845 F.2d at 1207).

### 1. Plaintiff's First Amendment Claims Against Defendants

Plaintiff alleges that his First Amendment rights were violated when Defendants retaliated against him for speaking up regarding the use of the drug K2 at Gaudenzia.  (Compl. ¶ 65.)  To establish a First Amendment retaliation claim, Plaintiff must show:  (1) that his conduct was constitutionally protected; (2) that he suffered an adverse action; and (3) that the constitutionally protected conduct was a "substantial factor" in the decision to take the adverse action.  Griffin v. Mun. of Kingston, 453 Fed. App'x 250, 253 (3d Cir. 2011); Mincy v. Klem, 448 Fed. App'x 169, 172 (3d Cir. 2011).  Even if Plaintiff satisfies these requirements, Defendants "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

We do not find it necessary to examine whether Plaintiff satisfies the elements of a retaliation claim because we find that Defendants' decision to return Plaintiff to incarceration was for "reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  Plaintiff refused to participate in the required treatment program, and, through his own admission, used drugs in violation of his parole.  It was for these infractions that Plaintiff was

6

sent back to prison, and not in retaliation for speaking up about the use of K2 at the facitlity. Thus, Plaintiff possesses no legally recognizable claim for retaliation.

2. **Plaintiff's Eighth Amendment Rights Claims Against Defendants**

The Eighth Amendment is the proper avenue for challenging the treatment a prisoner receives in prison and the conditions of his or her confinement. Helling v. McKinney, 509 U.S. 25, 31 (1993). Plaintiff broadly asserts violations of his Eighth Amendment rights, but does not pinpoint any specific offenses committed by Defendants. (Compl. ¶ 60.) In consideration of the Complaint as a whole, we surmise Plaintiff's claims to relate to the widespread smoking of the drug K2 at Gaudenzia, which Plaintiff asserts jeopardized his recovery. (Id. ¶ 35.) Thus, Plaintiff alleges infringements of the Eighth Amendment in relation to the conditions of his confinement. Wilson v. Seiter, 501 U.S. 294, 297 (1991) (holding that the Eighth Amendment applies to conditions of confinement that are not formally imposed in a criminal sentence).

In order to demonstrate that the conditions of an inmate's confinement violate the Eighth Amendment, Plaintiff must show that Defendants knew of and disregarded an excessive risk to Plaintiff's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). This requires an examination into the Defendants' state of mind as to whether they were deliberately indifferent. Id.; see also Estelle v. Gamble, 429 U.S. 97, 103 (1976) (deliberate indifference to the serious medical needs of a prisoner is sufficiently egregious to rise to the level of a constitutional violation). The inquiry as to the official's requisite knowledge is a question of fact, which may be shown by circumstantial evidence. Robinson v. Johnson, 449 Fed. App'x 205, 208 (3d Cir. 2011) (citing Farmer, 511 U.S. at 842). In order to survive a Rule 12(b)(6) Motion to Dismiss, Plaintiff bears the burden of providing adequate factual support to enable the court to make a "reasonable

inference" that Defendants committed the infringing actions. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 570).

It is the burden of Plaintiff to demonstrate: first, that Defendants knew of an excessive risk to Plaintiff's health, and, second, that Defendants disregarded this excessive risk. Farmer, 511 U.S. at 837. Plaintiff, however, has failed to meet his burden of establishing that Defendant Reira knew of the use of the drug K2 at Gaudenzia. It is Plaintiff's responsibility to provide such evidence, and its absence precludes a finding of deliberate indifference. Farmer, 511 U.S. at 837; see also Carter v. Morrison, No. 06-3000, 2007 WL 4233500, at * 13 (E.D.Pa. Nov. 28, 2007) (finding that where prison officials did not know of spider problem there was no Eighth Amendment violation arising from inmates' injuries). Consequently, the Eighth Amendment claims against Defendant Riera are dismissed.

However, the situation involving Defendant Thompson is different and requires further analysis. At the initial meeting between Plaintiff and Defendant Thompson, Plaintiff alleges he informed Defendant Thompson of the use of K2 at Gaudenzia. (Compl. ¶ 16.) Defendant asked Plaintiff whether he smoked K2, to which Plaintiff replied, "I don't smoke synthetic drugs." (Id.) Defendant Thompson then warned Plaintiff "don't get involve[d] with that stuff (K2)." (Id.) We note a problematic issue present at this juncture. Can the use of K2 at Gaudenzia qualify as an "excessive risk" to the health of Plaintiff where Plaintiff has asserted that he does not use this type of drug? We do not find it necessary to answer this question as this issue can be decided on other grounds. Therefore, we assume per arguendo that Plaintiff satisfied the first requirement.

The determinant issue in this case is whether Defendant Thompson's warning without further action disregarded an excessive risk to the health of Plaintiff. We find that it does not. In

Farmer, the Supreme Court found that, "prison officials who knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm is ultimately not averted." Farmer, 511 U.S. at 844. Under the Eighth Amendment, a prison official's duty is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under human conditions." Id. at 845 (quoting Spain v. Procunier, 600 F.2d 189, 193 (9th Cir. 1979)). Put more succinctly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

The reasonableness determination set forth in Farmer is fact specific due to the unique circumstances and conditions of confinement inherent in each case. The facts in this case show that Defendant Thompson acted reasonably. Defendant was Plaintiff's parole agent. He did not work at or for Gaudenzia, and bore only a tangential relationship, at best, to the conditions of Plaintiff's confinement at Gaudenzia. In this capacity, Defendant lacked the first hand knowledge that would have put him on notice of an "excessive risk" to Plaintiff's health. Furthermore, according to Plaintiff, Defendant inquired into the propensity of Plaintiff to use K2. After learning that Plaintiff does not use the drug, he warned Plaintiff to stay away from it. (Compl. ¶ 16.) Noting Defendant's minimal connection to Gaudenzia and his lack of knowledge as to any identifiable danger to Plaintiff, we find Defendant acted reasonably and responsibly in warning Plaintiff. Thus, Plaintiff's Eighth Amendment claims against Defendants are dismissed.[3]

---

[3] Although our research has failed to reveal any case directly on point, we believe it is apparent that deference should be granted to parole officials in these types of cases. It is not outlandish to think that drug use happens at a facility which exists to provide treatment for persons battling substance abuse

### 3. Plaintiff's Claims Under the Fourteenth Amendment

Plaintiff raises separate claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. We address each claim individually.

#### a. Plaintiff's Due Process Claim

Plaintiff complains that the revocation of his parole amounts to violations of his Fourteenth Amendment rights. The Due Process Clause of the Fourteenth Amendment guarantees that a government actor will not deprive someone of a protected interest in life, liberty or property without due process of law. See U.S. Const. amend. XIV. In order to assert an actionable procedural due process claim, a plaintiff must establish: (1) the existence of a protected liberty interest that has been interfered with by the state, and, (2) procedures related to the deprivation that were constitutionally insufficient. Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989). Liberty interests derive from one of two sources: it may be of such a fundamental nature that it is enshrined in the Constitution or it may be created by state law. McGrath v. Johnson, 67 F. Supp. 2d 499, 514 (E.D. Pa. 1999). Here, Plaintiff neglects to assert a liberty interest that was created by state law, and we fail to ascertain any such interest. Thus, the issue is whether the revocation of Plaintiff's parole and his subsequent incarceration interfered with a protected liberty interest that is preserved by the Constitution. We find that it does not.

The Supreme Court has affirmed that "[t]he conditional freedom of a parolee is a liberty interest protected by the due process clause of the Fourteenth Amendment." Morrissey v. Brewer, 408 U.S. 471, 482-88 (1972). However, this liberty interest is not absolute. See Montayne v. Haymes, 427 U.S. 215, 242 (1976). Rather, it is bounded by the status of the

---

addictions. Thus, there is always some level of risk present.

plaintiff. Id. Where the plaintiff remains in "institutional confinement," the Due Process Clause does not protect a prisoner's interest in remaining in a particular facility. See Montayne, 427 U.S. at 242; see also Asquith v. D.O.C., 186 F.3d 407, 411 (3d Cir. 1999). Contrarily, courts have found protected liberty interests after an inmate has been released from "institutional confinement." Asquith, 186 F.3d at 410 (citing Young v. Harper, 520 U.S. 143, 148 (1997); Morrissey, 408 U.S. at 482.

Several decades of judicial decisions have served to demarcate what constitutes "institutional confinement." When it is not clear whether an inmate has been released or is still held in "institutional confinement," courts focus on the freedoms bestowed and the restrictions placed on the individual. Asquith, 186 F.3d at 410-11. Thus, courts must make a highly fact intensive determination.

We find the Supreme Court's rulings in Morrissey and Young instructive. See Morrissey, 408 U.S. at 482; Young, 520 U.S. at 148. In Morrisey, the Court found that a parolee was not institutionally confined and, therefore, possessed a protected liberty interest where he could be gainfully employed, was free to be with family and friends and was generally free of the strictures of prison life. Morrissey, 408 U.S. at 482. Twenty-five years later, the Court, relying on Morrissey, found that an inmate, who was released from prison into a pre-parole program, was not institutionally confined. Young, 520 U.S. at 148. In this case, Young kept his own residence, maintained a job and lived a life generally free of the incidents of imprisonment. Id. The Court held that the inmate possessed liberty interests protected by the Due Process Clause, even in spite of the fact that, he could not use alcohol, incur debt other than in attaining further education or travel outside the county without permission. Id.

11

Contrary to these decisions, the United States Court of Appeals for the Third Circuit ("Third Circuit") held that a prisoner utilizing the state community release program to live at a halfway house was under "institutional confinement." Asquith, 186 F.3d at 411. The Third Circuit did not find the facts in Asquith analogous to Morrisey or Young. Id. Asquith lived in a strictly monitored halfway house where he was subject to a curfew, urine tests for drug use and searches of his room. Id. He was permitted to leave the house, but was required to check into and out of the facility and check in by phone several times a day. Id. Failure to do so would result in his being labeled an escapee. Id. He did possess certain freedoms such as the ability to leave the home for work and to obtain passes to visit family, shop, eat at restaurants or visit the local YMCA. Id. The Court did recognize that Asquith's liberty was significantly greater at the halfway house than in prison, but did not find that it rose to the standard of being free from "institutional confinement." Id. Thus, when Asquith violated the terms of the program, he was not entitled to any due process before returning to prison. Id. (citing Montayne, 427 U.S. at 242 (the Due Process Clause does not require a hearing whenever prison authorities transfer a prisoner to another institution so long as the conditions or degree of confinement are within the sentence imposed upon him)).

We find the strictures placed on Plaintiff in this case to more closely resemble Asquith. Plaintiff was ordered by the Pennsylvania Board of Parole to undergo outpatient treatment at Gaudenzia, a drug and violence rehabilitation center. While residing in this facility, Plaintiff was subject to room searches, drug testing and his movement was restricted. (Compl. ¶'s 11, 12, 17, 31.) These conditions are parallel to, if not more restrictive, than those faced in Asquith. Accordingly, Plaintiff is properly classified as under "institutional confinement." As such,

Plaintiff's removal from Gaudenzia did not trigger the protections of the Due Process Clause.

### b. Plaintiff's Equal Protection Claim

Plaintiff makes the broad statement that Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment without specifically denoting the illegal actions taken. In consideration of the Complaint and with due regard for Plaintiff's pro se status, we interpret Plaintiff's claim to arise out of his removal from Gaudenzia to state prison.

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To prevail on an Equal Protection claim, the burden rests with the plaintiff to present evidence that he has been treated differently from persons who are similarly situated. Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). Plaintiff's claim falters because he fails to demonstrate that Defendants treated him any differently than other prisoners of the state of Pennsylvania confined to drug rehabilitation centers. Quite to the contrary, Plaintiff was treated in exactly the same manner as any prisoner that refuses to comply with the conditions of their parole - he was sent back to prison.

Furthermore, the Equal Protection Clause acts in certain situations to protect members of a "suspect class." Doe v. Penn. Bd. of Prob. and Parole, 513 F.3d 95, 107 (3d Cir. 2008). Where the state action does not burden a fundamental Constitutional right or target a suspect class based on race, alienage or national origin, it must be upheld if there "is any reasonably conceivable state of facts that could provide a rational basis" for the action. Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010) (quoting Doe, 513 F.3d 95 at 107). Prisoners are not a suspect class. Abdul-Akbar v. McKelvie, 239 F.3d 307, 316 (3d Cir. 2001); Myrie v. Comm. N.J. Dept.

13

of Corrections, 267 F.3d 251, 263 (3d Cir. 2001) ("prisoners . . . are not a suspect classification"). Plaintiff is not a member of a suspect class nor does he assert the violation of a fundamental Constitutional right. Thus, Defendants need only show a rational basis for any of the actions taken. This standard is easily met as Plaintiff has admitted to using drugs in violation of his parole and refused to take part in the drug treatment program. In light of these transgressions, we find Defendants acted appropriately in returning Plaintiff to incarceration.

### 4. Amendment of the Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile. A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his pro se status, fails to state any claims under § 1983 for which relief may be granted.

## C.  Plaintiff's Claims under the Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") states that, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It is clear that the ADA applies to

prisons.  Penn. Dept. of Corr.'s v. Yeskey, 524 U.S. 206, 210 (1998).

Plaintiff states that he suffers from glaucoma, which requires him to wear dark sunglasses at all times to protect his eyes.  We construe Plaintiff's Complaint to allege that being denied the ability to remain in drug treatment on the basis of wearing dark sunglasses constitutes discrimination in violation of the ADA.  However, there is no evidence to support this assertion.  Plaintiff was placed back into incarceration for refusing to participate in the required drug and alcohol treatment.  This comports with Plaintiff's own admission that he smoked marijuana regularly in violation of the conditions of his parole.  Thus, we find no evidence of discrimination by Defendants based on a disability and no violation of the ADA.  Accordingly, Plaintiff's claims under the ADA are dismissed.

**D.     Plaintiff's Pennsylvania State Law Tort Claims Against Defendants**

Plaintiff asserts that Defendants acted negligently in breaching a duty of care to the Plaintiff.  (Compl. ¶ 59-60.)  As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff contends he suffered mental and physical stress.  (Id. ¶ 60.)  The exact claims of Plaintiff in this regard are not clear, but we interpret this to set forth Pennsylvania state tort claims for negligence and intentional infliction of emotional distress against Defendants.  However, Defendants, both employees of the Pennsylvania Board of Probation and Parole and acting within the scope of their employment, are entitled to sovereign immunity from suit by Plaintiff.  See Carter v. Morrison, No. 06-3000, 2007 WL 4233500, at * 8 (E.D. Pa. Nov. 28, 2007) (applying sovereign immunity to employees of the Parole Board); Maute v. Frank, 441 Pa. Super. 401 (Pa. Super. Ct. 1995) (applying sovereign immunity to state prison officials); Wilson v. Marrow, 917 A.2d 357 (Pa. Commw. Ct. 2007) (applying sovereign immunity to Board of

Parole officials). Accordingly, Plaintiff's state law tort claims are dismissed.

## IV. **CONCLUSION**

For the aforementioned reasons, we grant Defendants' Motion to Dismiss under Rule 12(b)(6) for failure to state a claim for which relief may be granted. All claims against Defendants are hereby dismissed.

An appropriate Order follows.