# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW OUTEN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 12-4166 |
| PRIALEAU, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                              **MAY 3, 2013**

  Pursuant to 28 U.S.C. § 1915(e)(2)(B), we review Plaintiff Andrew Outen's claims against Defendants, Gaudenzia employees Darien Prialeau, Larry Barksdale, Annie McCray and Brenda Kennerly. For the reasons set forth below, Plaintiff's claims are dismissed.

**I. BACKGROUND**

  Plaintiff Andrew Outen ("Plaintiff"), is, and was at all times, a prisoner in the custody of the Department of Corrections of the State of Pennsylvania. (Compl. ¶ 3.) In November of 2011, Plaintiff was paroled from prison to Gaudenzia D.R.C. ("Gaudenzia"), a drug treatment center located in Philadelphia, Pennsylvania. (Id. ¶ 11.) As a condition of his parole, Plaintiff was ordered to participate in a violence prevention program and to receive outpatient drug and mental health treatment. (Id.) Plaintiff admits to regularly smoking marijuana while enrolled in this program. (Compl. ¶¶ 17, 40.) On March 13, 2012, Plaintiff's parole was revoked for using drugs and refusing to participate in drug and alcohol treatment. (Id. ¶ 38; see also Doc. 22.) As a result of these violations of his parole, Plaintiff was returned to prison. (Id. ¶ 38; see also Doc.

22.)

On September 10, 2012, we granted Plaintiff leave to proceed *in forma pauperis* and Plaintiff filed a pro se Complaint against Defendants, Gaudenzia employees[1] Darien Prialeau ("Prialeau"), Larry Barksdale ("Barksdale"), Annie McCray ("McCray") and Brenda Kennerly ("Kennerly") (collectively "Defendants"), alleging deprivation of his civil rights under 42 U.S.C. § 1983 ("§ 1983"). (Id. ¶¶ 4-9.) Specifically, Plaintiff claims that Defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights, as well as the Americans with Disabilities Act (the "ADA") 42 U.S.C. § 12101. (Id. ¶¶ 15, 46, 47, 52, 53, 65.) Additionally, Plaintiff sets forth tort claims under Pennsylvania state law. (Compl. ¶¶ 59-60.)

## II.   STANDARD OF LAW

Indigent litigants are provided access to the federal courts through the *in forma pauperis* statute. See Neitzke v. Williams, 490 U.S. 319, 324 (1989); see also 28 U.S.C. § 1915(a). Where a prisoner is proceeding *in forma pauperis* in a civil action, the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review the complaint. Specifically, the Act requires district courts to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See Pfeiffer v. Hutler, No. 12-1335, 2012 WL 4889242, at *2 (D. N.J. Oct. 12, 2012) (citing 28 U.S.C. § 1915(e)(2)(B)).

---

[1]Plaintiff asserts that the Defendants hold the following positions at Gaudenzia: Darien Prialeau is the "Director of CCF men[s] 3rd floor"; Larry Barksdale is the "Director of Security"; Annie McCray is the "Director of Program Service"; and Brenda Kennerly is the "Counselor of AOD Orientation." See Compl. at 4-7.

## III. DISCUSSION

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Estelle v. Gamble, 429 U.S. 97, 106 (1976); Ruff v. Healthcare Adm'r, 441 F. App'x 843, 845 (3d Cir. 2011). We note that Plaintiff's pro se Complaint is difficult to understand. Interpreting what claims Plaintiff is intending to aver, and the facts surrounding such claims has proven to be difficult. This Opinion is our best attempt at interpreting Plaintiff's claims.

In "liberally construing" this Complaint, we attempt to consider all of Plaintiff's causes of action. Plaintiff alleges that Defendants violated his civil rights (§ 1983), the ADA and Pennsylvania state law. We address each allegation in the following.

### A. Civil Rights Claims

The enactment of § 1983 opened the federal courts as a forum for seeking redress for civil rights violations. See 42 U.S.C. § 1983. For a plaintiff to garner relief under § 1983, he or she must establish: (1) that the defendant acted under the color of state law, and, (2) that the defendant's action deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; see also Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). At this early stage in the litigation, where Defendants have not filed an answer, the Court is unable to decide whether Defendants acted under the color of state law.[2]

---

[2]The activity of a private individual can be deemed to be "under color of law" for purposes of § 1983 where private party has acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the state. However, some tenuous connection will not convert a private to a state action. D'Aurizio v. Palisades Park, 963 F. Supp. 387, 392 (D. N.J. 1997).

See Schulgen v. Stetson School, No. 99-4536, 2000 WL 352366, at *2 (E.D. Pa. Apr. 3, 2000) (stating that the state actor analysis determination is more appropriately considered in a Motion for Summary Judgment). Thus, in this Opinion, we examine solely whether Plaintiff has sufficiently plead a constitutional violation.

When evaluating a claim brought under § 1983, it is necessary to "identify the exact contours of the underlying right said to have been violated" in order to determine "whether [Plaintiff] has alleged a deprivation of a constitutional right at all." Natale, 318 F.3d at 581 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). Plaintiff alleges that the various Defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights. We address each claim in turn.

### 1. *First Amendment Claims*

Plaintiff sets forth freedom of speech claims against Defendants Barksdale, McCray and Kennerly. (Compl. ¶¶ 15, 19, 24, 36.) In an effort to pare down Plaintiff's rambling Complaint, we construe Plaintiff's accusations of retaliatory conduct by Defendants in response to his protected speech to implicate the First Amendment. In short, Plaintiff believes that he was transferred back to prison in retaliation for his complaints to Defendants of the use of the drug "K2" at Gaudenzia and his request for a transfer to another facility.[3]

To establish a First Amendment retaliation claim, Plaintiff must show: (1) that his conduct was constitutionally protected; (2) that he suffered an adverse action; and (3) that the constitutionally protected conduct was a "substantial factor" in the decision to take the adverse

---

[3] See http://www.whitehouse.gov/ondcp/ondcp-fact-sheets/synthetic-drugs-k2-spice-bath-salts (stating that "K2" is a synthetic marijuana).

4

action. Griffin v. Mun. of Kingston, 453 F. App'x 250, 253 (3d Cir. 2011); Mincy v. Klem, 448 F. App'x 169, 172 (3d Cir. 2011). Even if Plaintiff satisfies these requirements, Defendants "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

As an initial matter, we find Plaintiff's claims as set forth in the Complaint to be dubious at best. However, we do not find it necessary to examine whether Plaintiff satisfies the elements of a retaliation claim because we find that Defendants' decision to return Plaintiff to incarceration was for "reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Plaintiff refused to participate in the required treatment program, and, through his own admission, used drugs in violation of his parole. It was due to these infractions that Plaintiff was sent back to prison, and not in retaliation for any protected speech. Thus, Plaintiff possesses no legally recognizable claim for retaliation. See Baker v. Williamson, 453 F. App'x 230, 235 (3d Cir. 2011) (finding that inmate's transfer to a higher security facility was related to his poor conduct and not in retaliation for filing grievances).

### 2. *Eighth Amendment Claims*

Plaintiff labels certain interactions with Defendants, McCray, Kennerly and Prialeau, as violations of his Eighth Amendment rights. (See Compl. ¶¶ 18, 25, 30.) It is clear from the Complaint that none of the conduct complained about by Plaintiff amounted to an infringement upon his Eighth Amendment rights.

However, Plaintiff does set forth a valid Eighth Amendment claim against all of the named Defendants relating to the alleged widespread smoking of the drug "K2" at Gaudenzia,

5

which Plaintiff asserts jeopardized his recovery. (Id. ¶¶ 48, 50-52, 58.) The Eighth Amendment is the proper avenue for challenging the treatment a prisoner receives in prison and the conditions of his or her confinement. Helling v. McKinney, 509 U.S. 25, 31 (1993); Wilson v. Seiter, 501 U.S. 294, 297 (1991) (holding that the Eighth Amendment applies to conditions of confinement that are not formally imposed in a criminal sentence).

In order to demonstrate that the conditions of an inmate's confinement violate the Eighth Amendment, Plaintiff must show that Defendants knew of and disregarded an excessive risk to Plaintiff's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). This requires an examination into the Defendants' state of mind as to whether they were deliberately indifferent. Id.; see also Estelle v. Gamble, 429 U.S. 97, 103 (1976) (deliberate indifference to the serious medical needs of a prisoner is sufficiently egregious to rise to the level of a constitutional violation). The inquiry as to the officials' requisite knowledge is a question of fact, which may be shown by circumstantial evidence. Robinson v. Johnson, 449 Fed. App'x 205, 208 (3d Cir. 2011) (citing Farmer, 511 U.S. at 842).

Plaintiff bears the burden of demonstrating: first, that Defendants knew of an excessive risk to Plaintiff's health; and, second, that Defendants disregarded this excessive risk. Farmer, 511 U.S. at 837. It is Plaintiff's responsibility to provide such evidence, and its absence precludes a finding of deliberate indifference. Farmer, 511 U.S. at 837; see also Carter v. Morrison, No. 06-3000, 2007 WL 4233500, at *13 (E.D. Pa. Nov. 28, 2007) (finding that where prison officials did not know of spider problem there was no Eighth Amendment violation arising from inmates' injuries). As a preliminary note, we do not ascertain whether the presence of drug use at a drug treatment facility constitutes an "excessive risk" to a plaintiff's health. The

record as set forth in the Complaint is inconclusive as to whether each Defendant knew of or was informed by Plaintiff of the alleged widespread use of the drug "K2" at Gaudenzia.[4] However, this determination is not important, as it is evident from Plaintiff's Complaint that Defendants were not deliberately indifferent to the use of "K2" at Gaudenzia. To the contrary, Defendants actively enforced the prohibition of drug use at the facility by: locking down the third floor because Defendants found "K2" in a bathroom ceiling tile; Defendant Prialeau's implementing a policy of locking and unlocking the bathroom doors to prevent drug use; searches of persons entering the building for drugs and notifying the police when drugs are found on persons or the premises. (Compl. ¶¶ 12, 13, 23, 24.)

Under the Eighth Amendment, a prison official's duty is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under human conditions." Farmer, 511 U.S. at 845 (quoting Spain v. Procunier, 600 F.2d 189, 193 (9th Cir. 1979)). Put more succinctly, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. In light of these actions as stated in the Complaint, we find that Defendants acted reasonably in attempting to maintain a drug free facility, and that Plaintiff has failed to show that Defendants acted with deliberate indifference to his health or safety. See Farmer, 511 U.S. at 844 (stating that "prison officials who knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm is ultimately not

---

[4] In the Statement of Facts, Plaintiff fails to assert that he informed the Defendants about the use of "K2" at Gaudenzia. (See Compl. ¶¶ 18, 25, 30.) However, Plaintiff does allege in the Legal Argument section of the Complaint that he notified Defendants Prialeau and Barksdale of the drug use. (See Compl. ¶¶ 48, 50.)

7

averted"). Consequently, Plaintiffs' Eighth Amendment claims are dismissed.

  3.  *Fourteenth Amendment Claims*

Plaintiff also attempts to raise separate Fourteenth Amendment claims against Defendant Prialeau and Defendants McCray and Kennerly. (Compl. ¶¶ 49, 58). Plaintiff claims that since Defendant Prialeau did not act to stop the smoking of "K2" on the premises his Fourteenth Amendment rights were violated. However, as previously stated, this does not implicate the Fourteenth Amendment; rather, it is an Eighth Amendment conditions of confinement claim, which we previously dismissed within this Opinion.

Additionally, Plaintiff asserts that Defendants McCray and Kennerly breached his Fourteenth Amendment rights by sending him back to jail. By its explicit terms, the Fourteenth Amendment solely applies to the conduct of state actors.[5] Const. Am. XIV. At the outset of this constitutional analysis, we note that Plaintiff's Fourteenth Amendment claim could be dismissed for two reasons: (1) Defendants do not appear to fit within the plain meaning of "state actors" as they are employees of Gaudenzia and not the government; and (2) Defendants did not have the authority to make the decision to return Plaintiff to jail - this was the prerogative of the Pennsylvania Board of Probation and Parole. Nonetheless, out of an abundance of caution, we proceed to examine Plaintiff's claims against Defendants McCray and Kennerly under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

  a.  *Due Process Claim*

The Due Process Clause of the Fourteenth Amendment guarantees that a government

---

[5]As noted previously, we do not address whether Defendants fit properly within the classification of state actor.

actor will not deprive someone of a protected interest in life, liberty or property without due process of law.  See U.S. Const. amend. XIV.  In order to assert an actionable procedural due process claim, a plaintiff must establish: (1) the existence of a protected liberty interest that has been interfered with by the state, and, (2) procedures related to the deprivation that were constitutionally insufficient.  Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989).  Liberty interests derive from one of two sources: they may be of such a fundamental nature that it is enshrined in the Constitution or they may be created by state law.  McGrath v. Johnson, 67 F. Supp. 2d 499, 514 (E.D. Pa. 1999).  Here, Plaintiff neglects to assert a liberty interest that was created by state law, and we fail to ascertain any such interest.  Thus, the issue is whether the revocation of Plaintiff's parole and his subsequent incarceration interfered with a protected liberty interest that is preserved by the Constitution.  We find that it does not.

The Supreme Court has affirmed that "[t]he conditional freedom of a parolee is a liberty interest protected by the due process clause of the Fourteenth Amendment."  Morrissey v. Brewer, 408 U.S. 471, 482-88 (1972).  However, this liberty interest is not absolute.  See Montayne v. Haymes, 427 U.S. 215, 242 (1976).  Rather, it is bounded by the status of the plaintiff.  Id.  Where the plaintiff remains in "institutional confinement," the Due Process Clause does not protect a prisoner's interest in remaining in a particular facility.  See Montayne, 427 U.S. at 242; see also Asquith v. D.O.C., 186 F.3d 407, 411 (3d Cir. 1999).  Contrarily, courts have found protected liberty interests after an inmate has been released from "institutional confinement."  Asquith, 186 F.3d at 410 (citing Young v. Harper, 520 U.S. 143, 148 (1997); Morrissey, 408 U.S. at 482).

Several decades of judicial decisions have served to demarcate what constitutes

9

"institutional confinement." When it is not clear whether an inmate has been released or is still held in "institutional confinement," courts focus on the freedoms bestowed and the restrictions placed on the individual. Asquith, 186 F.3d at 410-11. Thus, courts must make a highly fact intensive determination.

We find the Supreme Court's rulings in Morrissey and Young instructive. See Morrissey, 408 U.S. at 482; Young, 520 U.S. at 148. In Morrissey, the Court found that a parolee was not institutionally confined and, therefore, possessed a protected liberty interest where he could be gainfully employed, was free to be with family and friends and was generally free of the strictures of prison life. Morrissey, 408 U.S. at 482. Twenty-five years later, the Court, relying on Morrissey, found that an inmate, who was released from prison into a pre-parole program, was not institutionally confined. Young, 520 U.S. at 148. In that case, Young kept his own residence, maintained a job and lived a life generally free of the incidents of imprisonment. Id. The Court held that the inmate possessed liberty interests protected by the Due Process Clause, even in spite of the fact that, he could not use alcohol, incur debt other than in attaining further education or travel outside the county without permission. Id.

Contrary to these decisions, the United States Court of Appeals for the Third Circuit ("Third Circuit") held that a prisoner utilizing the state community release program to live at a halfway house was under "institutional confinement." Asquith, 186 F.3d at 411. The Third Circuit did not find the facts in Asquith analogous to Morrissey or Young. Id. Asquith lived in a strictly monitored halfway house where he was subject to a curfew, urine tests for drug use and searches of his room. Id. He was permitted to leave the house, but was required to check into and out of the facility and check in by phone several times a day. Id. Failure to do so would

result in his being labeled an escapee. Id. He did possess certain freedoms such as the ability to leave the home for work and to obtain passes to visit family, shop, eat at restaurants or visit the local YMCA. Id. The Court did recognize that Asquith's liberty was significantly greater at the halfway house than in prison, but did not find that it rose to the standard of being free from "institutional confinement." Id. Thus, when Asquith violated the terms of the program, he was not entitled to any due process before returning to prison. Id. (citing Montayne, 427 U.S. at 242 (the Due Process Clause does not require a hearing whenever prison authorities transfer a prisoner to another institution so long as the conditions or degree of confinement are within the sentence imposed upon him)).

We find the strictures placed on Plaintiff in this case to more closely resemble Asquith. Plaintiff was ordered by the Pennsylvania Board of Parole to undergo outpatient treatment at Gaudenzia, a drug and violence rehabilitation center. While residing in this facility, Plaintiff was subject to room searches, drug testing and his movement was restricted. (Compl. ¶¶ 11, 12, 17, 31.) These conditions are parallel to, if not more restrictive, than those faced in Asquith. Accordingly, Plaintiff is properly classified as under "institutional confinement." As such, Plaintiff's removal from Gaudenzia did not trigger the protections of the Due Process Clause.

      b. *Equal Protection Claim*

Next, Plaintiff makes the broad statement that Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment without specifically denoting the illegal actions taken. In consideration of the Complaint, and with due regard for Plaintiff's pro se status, we interpret Plaintiff's claim to arise out of his removal from Gaudenzia to state prison.

The Equal Protection Clause provides that no State shall "deny to any person within its

11

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To prevail on an Equal Protection claim, the burden rests with the plaintiff to present evidence that he has been treated differently from persons who are similarly situated. Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). Plaintiff's claim falters because he fails to demonstrate that Defendants treated him any differently than other parolees at Gaudenzia. To the contrary, Plaintiff was treated in exactly the same manner as any parolee that refuses to comply with the conditions of their drug treatment program. Defendants notified the proper authorities and these authorities decided to return Plaintiff to prison.

Furthermore, the Equal Protection Clause acts in certain situations to protect members of a "suspect class." Doe v. Penn. Bd. of Prob. and Parole, 513 F.3d 95, 107 (3d Cir. 2008). Where the state action does not burden a fundamental Constitutional right or target a suspect class based on race, alienage or national origin, it must be upheld if there "is any reasonably conceivable state of facts that could provide a rational basis" for the action. Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010) (quoting Doe, 513 F.3d 95 at 107). Prisoners are not a suspect class. Abdul-Akbar v. McKelvie, 239 F.3d 307, 316 (3d Cir. 2001); Myrie v. Comm. N.J. Dept. of Corr.'s, 267 F.3d 251, 263 (3d Cir. 2001) (stating that "prisoners . . . are not a suspect classification"). Plaintiff is not a member of a suspect class nor does he assert the violation of a fundamental Constitutional right. Thus, Defendants need only show a rational basis for any of the actions taken. This standard is easily met as Plaintiff has admitted to using drugs in violation of his parole and refused to take part in the drug treatment program. In light of these transgressions, we find Defendants acted appropriately by notifying the proper authorities of Plaintiff's failure to comply with the drug treatment program.

B.  **Americans with Disabilities Act Claims**

The Americans with Disabilities Act ("ADA") states that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It is clear that the ADA applies to prisons. Penn. Dept. of Corr.'s v. Yeskey, 524 U.S. 206, 210 (1998).

Plaintiff states that he suffers from glaucoma, which requires him to wear dark sunglasses at all times to protect his eyes. We construe Plaintiff's Complaint to allege that being denied the ability to remain in drug treatment on the basis of wearing dark sunglasses constitutes discrimination in violation of the ADA. However, there is no evidence to support this assertion. Plaintiff was placed back into incarceration for refusing to participate in the required drug and alcohol treatment. This comports with Plaintiff's own admission that he smoked marijuana regularly in violation of the conditions of his parole. Thus, we find no evidence of discrimination by Defendants based on a disability and no violation of the ADA. Accordingly, Plaintiff's claims under the ADA are dismissed.

C.  **Pennsylvania State Law Tort Claims**

Lastly, Plaintiff broadly states that Defendants acted negligently in breaching a duty of care to the Plaintiff. (Compl. ¶¶ 59-60.) As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff generally contends he suffered mental and physical stress. (Id. ¶ 60.) The exact claims of Plaintiff in this regard are not clear, but we interpret them to set forth Pennsylvania state law tort claims for negligence and intentional infliction of emotional distress against Defendants. Neither of these claims has merit. Therefore, all of Plaintiff's Pennsylvania

13

state law tort claims are dismissed.

An actionable claim of negligence requires Plaintiff to show: (1) Defendant owed a duty of care to plaintiff; (2) breach of that duty; (3) that the Plaintiff's injury resulted from such breach; and (4) that the Plaintiff suffered an actual loss. Plaintiff's claim is not actionable because there is no evidence that Defendants breached a duty of care to the Plaintiff or that Plaintiff's incarceration was a result of any breach by Defendants. Plaintiff was incarcerated due to his own conduct (i.e., failure to comply with the drug treatment and his drug use).

To set forth a viable claim for intentional infliction of emotional distress, Plaintiff is required to show that Defendants engaged in intentional extreme and outrageous conduct. Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 216 (Pa. Super. 2012) (citing Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)). Plaintiff has failed to demonstrate conduct of this type. Additionally, a review of the Complaint leads us to conclude quite the opposite - that Defendants acted reasonably toward Plaintiff at all times. In consideration of these findings, Plaintiff's state law claims against Defendants are dismissed.

## IV.     CONCLUSION

Accepting as true all of the factual allegations in the Complaint, as well as all reasonable inferences that can be drawn from them, we find that Plaintiff has failed to set forth cognizable claims under § 1983, the ADA and Pennsylvania state law. Therefore, Plaintiff's claims shall be dismissed under § 1915(e)(2)(B) because they fail to state a claim for which relief may be granted.

The Third Circuit has directed that "generally, a district court should not *sua sponte* dismiss a complaint for failure to state a claim for which relief may be granted pursuant to

28 U.S.C. § 1915(e)(2)(B)(ii) without providing an opportunity for the plaintiff to amend the complaint." Peeples v. Citta, No. 12-2389, 2012 WL 4857185, at *2 (3d Cir. Oct. 15, 2012). However, granting a plaintiff the opportunity to amend the complaint is not required where it would prove "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal for failure to state a claim for which relief may be granted, the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings, but find that allowing for amendment by Plaintiff in this case would be futile. Plaintiff had ample opportunity in his twenty-seven page Complaint to set forth all of the facts that form the basis for his claims. After reviewing the Complaint, we do not agree that these facts give rise to cognizable claims. Rather, we find that Plaintiff's Complaint exhibits quite the opposite. Thus, a careful review of the record supports a finding that Plaintiff, even garnering all the liberalities that accompany his pro se status, fails to state any claims under § 1983, the ADA or Pennsylvania state law for which relief may be granted.

      An appropriate Order follows.